# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **Rancho Holdings, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **V.** ) | Case No. 10-0997-CV-W-JTM |
| ) | |
| **Manzanillo Associates, Ltd., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Pending before the Court is PLAINTIFF RANCHO HOLDINGS, LLC'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, filed March 28, 2011 [Doc. 22]. On April 1, 2011, counsel for the parties appeared before the Court for argument on plaintiff's motion. At the conclusion of the hearing, the Court orally denied plaintiff's request for a temporary restraining order and preliminary injunction and advised counsel that this written ORDER would follow.

### Background

This case centers on a dispute involving a 515-acre resort property in Costa Rica. In 2005, plaintiff Rancho Holdings, LLC ("Plaintiff") and defendant Manzanillo Associates, Ltd. formed Rancho Manzanillo, LLC (the "Company")[1] for the purpose of ownership, development and operation of the resort property in Costa Rica (the "Property"). For purposes of this

---

[1] Plaintiff and Defendant Manzanillo Associates, Ltd are the only two members of the Company. Defendants Stone, Myers, and Stone Corporation are owners of Defendant Manzanillo Associates, Ltd.

discussion, the Property consists of a 2.5-acre "House Parcel," as well as a larger, surrounding 512.5-acre tract – comprising a total of 515 acres of resort property. An OPERATING AGREEMENT OF RANCHO MANZANILLO, LLC, dated May 31, 2005 (the "Operating Agreement") sets forth the respective rights and obligations of Plaintiff and Defendants regarding the Property.

Over the course of time, the relationship between Plaintiff and Defendants deteriorated to some extent, and on February 5, 2008, the parties entered into a FIRST AMENDMENT TO OPERATING AGREEMENT OF RANCHO MANZANILLO, LLC ("First Amendment") which amended certain terms, conditions and provisions of the Operating Agreement. Specifically, the First Amendment provided that Defendants would cease developing and marketing the Property and would receive a "Termination and Compliance Fee" comprised of a cash payment and conveyance of the House Parcel by the Company, if certain conditions regarding recoupment of Plaintiff's capital contributions and indebtedness were first met. In the present litigation, Plaintiff seeks a declaratory judgment resolving a dispute as to the interpretation and application of the provision triggering the right of the Defendants to conveyance of the House Parcel and receipt of the cash payment. Plaintiff contends that the dispute over the House Parcel creates a cloud on the title to the entire property, making it difficult to develop or sell. In response, Defendants also seek declaratory judgment in their favor and assert counterclaims for breach of contract and quantum meruit.

At some point after this case was filed, Plaintiff informed Defendants that there was a prospective buyer for the entire Property and that the buyer would purchase the Property even if the House Parcel was "carved out" of the sale. In response to this information, Defendant Stone

sent an e-mail to a principal investor with Plaintiff setting forth his concerns about the House Parcel and stating that, if necessary, he would institute proceedings in Costa Rica to protect his property rights in the House Parcel. Fearing that this potential civil litigation in Costa Rica would effectively squelch any prospective sale of the Property, Plaintiff now seeks a temporary restraining order and preliminary injunction barring the Defendants from filing any claims they may have against Plaintiff in the courts of Costa Rica or any other jurisdiction.

In support of its motion, Plaintiff argues that the parties specifically agreed that any dispute arising out of the Operating Agreement, First Amendment, or the relationship between the parties would be subject to Missouri law, with Missouri courts being the exclusive venue for any litigation. Specifically, the Operating Agreement provides:

> This Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the laws of the State of Missouri without regard to any conflicts of laws that would otherwise require or permit the application of other law. The exclusive venue for any dispute or matter arising out of this Agreement or the relationship between the parties hereto arising out of this Agreement shall be in a court of jurisdiction located in Kansas City, Missouri.

Operating Agreement, Section 9.4, p 37. Moreover, Plaintiff asserts that the parties agreed to the forum selection and choice of law provisions a second time in 2008 when they entered into the First Amendment which provides:

> This Agreement shall, in all events, be construed and interpreted in accordance with the laws of the State of Missouri . . . . The parties acknowledge and agree that the exclusive venue for any proceeding or action to enforce this Agreement or any provision thereof or for any other matter relating to this Agreement, the Operating Agreement or the relationship between the parties . . . shall be in a court of competent jurisdiction in Jackson County, Missouri and/or the United States Federal District Court for the Western District of the State of Missouri and located in Kansas City, Missouri.

3

First Amendment, Section 12, p.20. Plaintiff contends that Defendants should be held to the terms to which they agreed, and that failing to enjoin Defendants from filing any action in Costa Rica allows Defendants effectively to scuttle the sale of 512.5 acres to which they have no claim.

Defendants respond by claiming that in order to lodge what is equivalent to a *lis pendens* on the House Parcel, Costa Rican law requires a pending civil action in Costa Rico and, further, that because the 2.5-acre House Parcel has no independent property description separate from that of the 512.5 acres, they have no choice but to implicate the entire Property in order to protect any property rights they have in Costa Rica. Moreover, Defendants contend that the terms of the sale of the entire Property, and the reasonableness of those terms, potentially could affect whether the conditions triggering the conveyance of the House Parcel have been met and therefore they have an interest in the terms of any sale of the entire Property.

Plaintiff counters that the legal process to "carve out" and adequately describe the House Parcel is currently underway in Costa Rica, but has not been completed and that when it is, Defendants' property rights could be adequately protected by filing the Costa Rican equivalent of a *lis pendens* on the House Parcel only.

## Foreign Antisuit Injunction Standard

It is established that federal courts have the power to enjoin persons subject to their jurisdiction from filing foreign suits. *Goss Int'l Corp v. Man Roland Druckmaschinen Aktiengesellschaft,* 491 F.3d 355, 359 (8th Cir. 2007). However, the federal circuits are split in their approach to the level of deference afforded international comity in the determination of whether to issue a foreign antisuit injunction. *Id.* The Eighth Circuit, in the company of the

4

First, Second, Third, Sixth and D.C. Circuits, has adopted what has been labeled as the "conservative approach" which emphasizes deference to concerns of international comity and under which a foreign anti-suit injunction will issue <u>only</u> if the movant demonstrates that (1) the foreign action would prevent United States jurisdiction or threaten a vital United States policy, <u>and</u> (2) the domestic interest outweigh concerns of international comity. *Id* [2]

In endorsing the "conservative approach," the Eighth Circuit in *Goss* noted that the conservative approach:

> (1) 'recognizes the rebuttable presumption against issuing international antisuit injunctions,' (2) 'is more respectful of principles of international comity,' (3) 'compels an inquiring court to balance competing policy considerations,' and (4) 'acknowledges that "issuing an international antisuit injunction is a step that should be taken only with care and great restraint" and with the recognition that international comity is a fundamental principle deserving of substantial deference.'

*Goss,* 491 F.3d at 360 (*quoting Quaak v. Klynvelt Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 18 (1st Cir. 2004)). As noted by the Chief Judge of this Court in another case, *Goss* holds "that the overriding, fundamental question when considering issuance of a foreign anti-suit injunction [is]: What is the vital American policy being protected by the anti-suit injunction?" *Continental Casualty Co. v. AXA Global Risks (UK) Ltd.*, 2010 WL 1268038, op. at *3 (W.D. Mo. Apr. 2, 2010).

---

[2] By contrast, the Fifth, Seventh and Ninth Circuits employ the "liberal approach" which places less emphasis on international comity and which allows foreign anti-suit injunctions in circumstances as amorphous as those in which the foreign action could cause "inequitable hardship and tend to frustrate and delay the speedy and efficient determination of the cause." *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 627-28 (5th Cir. 1996); *see also Gallo Winery v. Andina Licores,* 446 F.3d 984 (9th Cir. 2006); *Allendale Mutual Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425 (7th Cir. 1993).

Plaintiff acknowledges that this is not a case over which the this Court would lose jurisdiction if Defendants file an action in Costa Rica. However, Plaintiff does assert that the "vital United States policy" and "domestic interest" set forth in the two-part *Goss* test is the need to insure respect and adherence to the contractual venue selection clauses of the Operating Agreement and the First Amendment. To that end, the Court will assume for purposes of the present motion that the integrity of the venue selection clauses meets the requirement of a "vital United States policy" and that allowing the potential Costan Rican action by Defendants would "threaten" this vital United States policy as set out in the first part of the *Goss* test.

However, *Goss* requires both parts of its test to be met. As such, the issue then boils down to whether the domestic interest identified by Plaintiff outweighs the concerns of international comity. In this particular case, the Court finds that the supposed sanctity of the venue selection clause does not outweigh the concern of international comity. In this regard, the reasoning of the court in *Continental Casualty* is persuasive.

*Continental Casualty* involved a contract dispute between an insurer and a reinsurer. While the litigation was pending, the insurer sought an injunction to prevent the reinsurer from pursuing a parallel declaratory action in the United Kingdom. After discussing the *Goss* test, the court concluded:

> This case, based upon a question of contract law, simply does not rise to the level of a "vital American interest" sufficient to outweigh concerns of international comity. "The possibility a foreign court's holding might threaten the United States plaintiff's interest in prosecuting its lawsuit is not a threat to the jurisdiction of the United States courts."

*Continental Casualty*, op. at *3 (*quoting*, *in part*, *Goss*, 491 F.3d at 367).

Similarly, in this case, the preservation of the integrity of a contractual clause is insufficient to outweigh the interests of international comity. It is well understood that:

> In parallel litigation, the issue of comity is an important and omnipresent factor. Although it is a consideration in federal and state litigation, it assumes even more significance in international proceedings.

*General Electric Co. v. Deutz AG*, 270 F.3d 144, 159-60 (3rd Cir.2001). Comity has been described as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws." *Id.* (*citing Hilton v. Guyol*, 159 U.S. 113, 143, 16 S.Ct. 139, 164-65 (1895)). In this Circuit, at least, this fundamental precept is important enough that it "dictates that foreign antisuit injunctions be issued sparingly and only in the rarest of cases." *Goss*, 491 F.3d at 360 (*citation omitted*). This is simply not one of those rare cases.

For the foregoing reasons, it is

**ORDERED** that PLAINTIFF RANCHO HOLDINGS, LLC'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, filed March 28, 2011 [Doc. 22] is **DENIED**.

       */s/ John T. Maughmer*
      **JOHN T. MAUGHMER**
      **U. S. MAGISTRATE JUDGE**