IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RANCHO HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:10-cv-00997-JTM |
| v. | ) |
| | ) |
| MANZANILLO ASSOCIATES, LTD., | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

### ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

On this the 14th day of November, 2013, Plaintiff Rancho Holdings, LLC's ("Plaintiff") Motion for Preliminary and Permanent Injunction ("Motion") comes before the Court for decision. Having reviewed Plaintiff's unopposed Motion and Suggestions in support thereof, and being fully advised of the premises, the Court finds as follows:

### I. FACTUAL BACKGROUND[1]

1. On October 14, 2010, Plaintiff filed this action against Defendants Manzanillo Associates, Ltd. ("Manzanillo"), T.F. Stone Companies, Inc. ("Stone, Inc."), Stone and Myers (collectively, "Defendants" or "the Stone Defendants") seeking

---

[1] Plaintiff filed its Motion on July 22, 2013, and the deadline for Defendants to respond was August 8, 2013. Defendants Tommy F. Stone ("Stone") and Bruce Martin Myers ("Myers") filed a motion for extension of time to respond to the Motion, seeking a 60-day extension of time up to and including October 7, 2013, to hire new counsel and respond to the Motion. The 60-day extension of time expired before this Court found the motion for extension to be moot inasmuch as neither Stone nor Myers filed a response to the Motion and new counsel did not enter an appearance by October 7. Accordingly, the Court deems as true the material uncontroverted facts set forth in Plaintiff's Suggestions, and the factual recitations set forth herein are taken therefrom. *See*, *e.g.*, *Harr v. Campbell*, 2013 WL 1282341, at *1 & n.1 (E.D. Mo. Mar. 27, 2013) (taking as true all statements of fact in movant's motion for summary judgment where no response was filed); *Wenaha Music Co. v. Weathermon*, 1989 WL 73213, at *1 (W.D. Mo. Feb. 17, 1989) (finding that no genuine issue of material fact existed for purposes of summary judgment motion where no response was filed).

1

declaratory relief related to the meaning and effect of a contract provision dealing with rights to a 2.5-acre parcel of land (the "House Parcel") that is located within a 515-acre resort property located in Costa Rica (the "Property").

2. The substance of the dispute was whether the House Parcel was subject to immediate conveyance to Defendants pursuant to the terms of a First Amendment to the Operating Agreement governing Rancho Manzanillo, LLC (the "Company")—*i.e.*, the entity created to own and develop the entire Property. Defendants contended that the House Parcel should be conveyed immediately upon the satisfaction of the "Recourse Indebtedness," as described in the First Amendment. Plaintiff sought a declaration that the House Parcel was only to be conveyed after <u>all three</u> of the following conditions had been satisfied: (a) the principals of Rancho Holdings no longer have any liability under the bank loans that they guaranteed in connection with the resort development; (b) Rancho Holdings has been repaid all funds that it loaned to the Company for the resort development; and (c) Rancho Holdings has received all capital it contributed to the Company.

3. On March 31, 2011, while this lawsuit was pending, the Stone Defendants filed suit in Costa Rica (the "Costa Rican Litigation") against Rancho Holdings, the Company, and the Company's authorized agents, Paul Fingersh ("Fingersh") and Ronald Nolan ("Nolan") (collectively, the "Costa Rican Defendants") asserting two claims: (1) a right to payment of money in the amount of $750,000 for services rendered; and (2) a right to immediate conveyance of the House Parcel, based upon the same interpretation of their

rights under the First Amendment to the Operating Agreement as the Stone Defendants were asserting in this case.

4. On or about April 14, 2011, the Stone Defendants filed a motion in the Costa Rican Litigation seeking an annotation of notice in the public record of their claim to a current right to ownership of the House Parcel. The annotation is roughly the equivalent of a lis pendens in American jurisprudence. The Costa Rican court granted the Stone Defendants' request, and ordered that the "Annotation" be made. The Annotation was filed against the entire Property and not just the disputed House Parcel.

5. On August 15, 2011, Rancho Holdings filed a motion for summary judgment in this litigation on its claim for declaratory judgment, and on Defendants' counterclaims for declaratory judgment, breach of contract, and quantum meruit. On or about August 31, 2011, Defendants filed their opposition to Plaintiff's motion, and filed their own cross-motion for summary judgment.

6. On November 15, 2011, this Court issued an Order granting Plaintiff's motion for summary judgment, in which the Court made several specific findings of fact, including that:

> 6. Pursuant to the First Amendment to the Operating Agreement, the House Parcel was subject to conveyance to Manzanillo Associates, Ltd., T.F. Stone Companies, Inc., Tommy F. Stone, and Bruce Marlin Myers as part of the "Termination and Compliance Fee" only upon satisfaction of all of the following conditions:
>
>> (a) the principals of Rancho Holdings, LLC no longer have any liability under the bank loans that they guaranteed in connection with the Costa Rican resort development undertaken by Rancho Manzanillo, LLC ("the Recourse Indebtedness");

(b) Rancho Holdings, LLC has been repaid all funds that it loaned to Rancho Manzanillo, LLC for the resort development ("the Member Loans"), and

(c) Rancho Holdings, LLC has received all capital it contributed to Rancho Manzanillo, LLC ("the Unrecouped Capital").

7. Unless and until the conditions set out above are satisfied, the House Parcel is not subject to conveyance to Manzanillo Associates, Ltd., T.F. Stone Companies, Inc., Tommy F. Stone, and Bruce Marlin Myers as part of the "Termination and Compliance Fee" as set forth in the First Amendment to the Operating Agreement.

8. Notwithstanding the arguments of the parties as to whether or not condition (a) has been met, it is undisputed that, to date, conditions (b) and (c) have not. Inasmuch as the conditions set out above have not been satisfied, the House Parcel is not presently subject to conveyance to Manzanillo Associates, Ltd., T.F. Stone Companies, Inc., Tommy F. Stone, and Bruce Marlin Myers as part of the "Termination and Compliance Fee" as part of the First Amendment to the Operating Agreement.

7. Defendant Stone appealed the Court's Judgment, and the Eighth Circuit affirmed in a *per curiam* opinion.

8. Since the Court issued its Judgment, the Stone Defendants have not dismissed the Costa Rican Litigation, nor have they taken any action to remove the Annotation. In both an Answer and Counterclaim filed in the Costa Rican Litigation, the Costa Rican Defendants (including Rancho Holdings, plaintiff herein) have advised the Costa Rican court of this Court's Judgment, and have pleaded it as *res judicata* as to the Stone Defendants' claim to the House Parcel in the Costa Rican Litigation.

9. Neither of the two conditions to conveyance of the House Parcel that this Court found were unsatisfied as of the time of Judgment has since been satisfied. Rancho Holdings has not been repaid on the Member Loans, which are still outstanding in the

amount of $586,816.  Rancho Holdings also has not received all of the Unrecouped Capital, which remains outstanding in the amount of $29,414,274.

10. The Annotation is preventing the sale and/or development of the Property. Rancho Holdings has been attempting to sell or obtain an investor in order to develop the Property, and at one time had a written proposal to purchase the Property from a Canadian investment group.  The Annotation prevented that sale, and has operated as a roadblock to serious negotiations with other prospective purchasers, and investors in, the Property.

11. As a result of Rancho Holdings' inability to sell the Property, or develop it, it has been required to continue to service the debt on the Property and has made and is continuing to make payments of $218,136.95 per month.  The balance due on the existing mortgage on the Property as of the end of June 2013 was $31,991,576.00.  As long as Rancho Holdings is unable to sell, develop, or obtain an investor in the Property, it will continue to be required to service the debt on the Property.

12. On July 22, 2013, Plaintiff filed its Motion, in which Plaintiff essentially seeks an order enjoining each of the defendants to this lawsuit from prosecuting or maintaining the Costa Rican Litigation and the associated Annotation.  Plaintiff bases its Motion on the Court's authority to protect its prior Judgment, which adjudicated in Plaintiff's favor the Stone Defendants' claim to a current right to the House Parcel.

## II. CONCLUSIONS OF LAW

1. The Court has continuing ancillary enforcement jurisdiction over this action to enforce its prior Judgment pursuant to the All Writs Act.  *See*, *e.g.*, *Cardiovascular Systems, Inc. v. Shturman*, No. 07-3749 (JNE/SRN), 2009 WL 3164784, at *2 (D. Minn.

Sep. 28, 2009) ("'[A] federal court may exercise ancillary enforcement jurisdiction to prevent a [nonfederal] court action from contravening a decree that the federal court has previously issued.'") (quoting *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009)).

2. "'[F]ederal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits.'" *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 359 (8th Cir. 2007) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996)). Before issuing such an anti-suit injunction, federal courts first must determine whether two threshold requirements are met: (1) the parties must be substantially the same in both matters; and (2) the resolution of the case before the enjoining court must be dispositive of the action to be enjoined. *See*, *e.g.*, *Paramedics Electromedicina Comercial, Ltda. v. GE Medical Sys. Information Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) (hereafter "*Paramedics*"); *Goss*, 491 F.3d at 366 (reversing trial court's entry of anti-suit injunction where "[t]he issues previously decided below in the district court are different from the issues sought to be litigated in the foreign jurisdiction").

3. If those two threshold requirements are met, Eighth Circuit courts then apply the "conservative approach"—which is also followed in the First, Second, Third, Sixth and District of Columbia Circuits—in deciding whether to issue an anti-suit injunction, under which the district court determines (A) whether an action in the foreign jurisdiction prevents United States jurisdiction or threatens a vital United States policy, and (B) whether the domestic interests outweigh concerns of international comity. *See Goss*,

491 F.3d at 359-61 & n.4. "Under the conservative approach, comity dictates that foreign antisuit injunctions be issued sparingly and only in the rarest of cases." *Id.* at 359 (internal quotation marks and brackets omitted).

4. In this case, the first threshold requirement is met. The Defendants in this action, and the Defendants against whom the Court entered summary judgment declaring that they have no current right to the House Parcel, are Manzanillo, Stone, Inc., Stone, and Myers. These are exactly the same persons/entities who are plaintiffs in the Costa Rican Litigation asserting a current right to the House Parcel. And though two of the defendants in the Costa Rican Litigation are not formally parties to this action, the Stone Defendants' claim to a *lis pendens* in Costa Rica arises out of the same facts, circumstances, and relationships as alleged in this litigation. Where, as here, "parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement is met." *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006); *see also Paramedics*, 369 F.3d at 652-53 (citing similar cases).

5. Similarly, the second threshold requirement is met. The Stone Defendants are asserting only two claims in the Costa Rican Litigation: (1) a right to payment of money in the amount of $750,000 for services rendered; and (2) a right to immediate conveyance of the House Parcel, based upon the same interpretation of their rights under the First Amendment to the Operating Agreement as the Stone Defendants were asserting in this case. The second of those claims—the alleged right to an immediate conveyance of the House Parcel—is exactly the same allegation, based upon exactly the same argument,

7

as the Stone Defendants unsuccessfully asserted in this litigation. Moreover, the entire basis for the Stone Defendants' request for the Annotation, and the entire basis of the Costa Rican court's order granting that request, was the Stone Defendants' alleged right to an immediate conveyance of the House Parcel. In its Judgment, this Court has already decided that the Stone Defendants are not entitled to conveyance of the House Parcel until all three of the conditions set forth in the Judgment have been met. To date, those conditions still have not been met. Accordingly, this Court's Judgment is dispositive of both (a) the Stone Defendants' maintenance of their claim in the Costa Rican Litigation that they are entitled to immediate conveyance of the House Parcel, and (b) the Annotation giving public notice of that claimed right.[2]

6. Further, the facts of this case establish that the Costa Rican Litigation and Annotation based thereon threatens a vital United States policy, and that the domestic policy at issue—*res judicata* and the finality of federal court judgments—outweighs concerns of international comity. Federal district courts generally recognize that "*[r]es judicata* is an important public policy of our judicial system." *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 Civ. 3231(RPP), 2002 WL 975623, at *7 (SD.N.Y. May 9, 2002); see also *Younis Bros. & Co. v. Cigna Worldwide Ins. Co.*, 167 F. Supp. 2d 743, 747 (E.D. Pa. 2001) (hereafter "*Younis Bros.*") (granting anti-suit injunction and recognizing "our nation's strong public policy in favor of res judicata and the finality of judgments."). Where, as here, "one court has already reached a judgment—on the same issues, involving

---

[2] Importantly, Plaintiff does not currently seek to include the Stone Defendants' other claim in the Costa Rican Litigation—*i.e.*, the alleged right to payment of money in the amount of $750,000 for services rendered—in its request for an anti-suit injunction, because there has been no final judgment issued by this Court disposing of that claim.

8

the same parties—considerations of comity have diminished force." *Paramedics*, 369 F.3d at 655; *see also Karaha Bodas Company, L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 127 (2d Cir. 2007); *Laker Airways Limited v. Sabena, Belgian World Airlines*, 731 F.2d 909, 928 n. 53 (D.C. Cir. 1984) ("There is less justification for permitting a second action after a prior court has reached a judgment on the same issues. The parallel proceeding rule applies only until one court reaches a judgment that may be pled as res judicata in the other.").

7. Moreover, the Court recognizes that other federal courts have issued anti-suit injunctions to protect prior judgments in similar circumstances. *See*, *e.g.*, *Commercializadora Portimex S.A. de C.V. v. Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645 (E.D. La. 2005); *Younis Bros.*, 167 F. Supp. 2d at 747; *Paramedics*, 369 F.3d at 653-56 (affirming district court's injunction requiring enjoined party to dismiss Brazilian lawsuit following district court judgment compelling arbitration, and affirming district court's finding of civil contempt for party's failure to comply); *Bethell v. Peace*, 441 F.2d 495, 498 (5th Cir. 1971) (affirming anti-suit injunction against Bahamian litigation based upon contract that district court had declared invalid on its face in prior judgment); *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 131 (S.D.N.Y. 1997) (granting anti-suit injunction against maintaining Italian litigation involving same issues that district court was determining in plaintiff's favor in declaratory judgment action).

8. Finally, though the "irreparable harm" analysis applicable to most requests for injunctive relief is not necessary for issuance of an anti-suit injunction,[3] the Court finds that Plaintiff would suffer such harm if no injunction is issued. The Annotation is preventing the sale of the Property and inhibiting Plaintiff's ability to obtain an investor in order to develop the Property. Further, as a result of Rancho Holdings' inability to sell or develop the Property, it has been required to continue to service the debt on the Property and has made and continues to make payments of $218,136.95 per month. Finally, "'[c]ourts have repeatedly found that immediate and irreparable injury results from having to defend claims that should be barred.'" *Zen-Noh Grain Corp.*, 373 F. Supp. 2d at 653 (quoting *New York Life Ins. Co. v. Deshotel*, 946 F. Supp. 454, 465 (E.D. La. 1996)); *see also Younis Bros.*, 167 F. Supp. 2d at 747 (finding that defendant would be irreparably harmed "if it is forced to continue to defend against plaintiff's vexatious and duplicative Liberian litigation and/or defend against execution upon a judgment that conflicts with the final judgment in this case").

9. For all these reasons, the Court finds that Plaintiff is entitled to the relief it seeks in its Motion.

10. Moreover, because there is no genuine issue of material fact in dispute, no hearing on Plaintiff's Motion is necessary. *See*, *e.g.*, *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002) ("An evidentiary hearing is required prior to issuing a preliminary injunction only when a material factual controversy exists.");

---

[3] As recognized by the Eighth Circuit, the traditional four-factor preliminary injunction analysis under *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc) is an "awkward fit" for the type of analysis required for cases involving foreign anti-suit injunctions, and therefore the modified, two-prong analysis set forth above is applied in such cases. *See Goss*, 491 F.3d at 361 n.4.

*Wedgewood Ltd. P'ship I v. Township of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010) (holding that granting permanent injunction without evidentiary hearing was proper where there were no genuine issues of material fact); *Socialist Workers Party v. Illinois State Bd. of Elections*, 566 F.2d 586, 587 (7th Cir. 1977) (holding that no evidentiary hearing was necessary for issuance of permanent injunction where no factual disputes remained).

**IT IS THEREFORE ORDERED THAT**:

(a) Each of the Stone Defendants is hereby preliminarily and permanently ENJOINED from bringing, prosecuting, or maintaining any lawsuit in any jurisdiction seeking conveyance of the House Parcel to any of them prior to the satisfaction of all of the conditions set forth in this Court's November 15, 2011 Judgment;

(b) Each of the Stone Defendants is hereby ORDERED to take all necessary actions to dismiss all claims they have in the Costa Rican Litigation for conveyance of the House Parcel;

(c) Each of the Stone Defendants is hereby ORDERED to take all necessary steps to remove and/or dismiss, the Annotation within twenty (20) days after this Order becomes final.

Dated: November 14, 2013

   /S/   *John T. Maughmer*
Honorable John T. Maughmer
United States Magistrate Judge